IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 10, 2015

**EVAN KENYON KNOX v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011C2668      Cheryl A. Blackburn, Judge**

_____

**No. M2014-01104-CCA-R3-PC - Filed May 27, 2015**

_____


Petitioner, Evan Kenyon Knox, was indicted by the Davidson County Grand Jury for first degree premeditated murder and for employing a firearm during the commission of a dangerous felony.  Petitioner pleaded guilty to the lesser-included offense of second degree murder, and the trial court dismissed the firearm charge.  Pursuant to the plea agreement, Petitioner received an out-of-range sentence of 30 years to be served at 100 percent.  Petitioner filed a petition seeking post-conviction relief, alleging that his trial counsel provided ineffective assistance and that Petitioner's guilty plea was unknowingly and involuntarily entered.  Following an evidentiary hearing, the post-conviction court denied relief.  Petitioner appeals.  Following a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

David Harris, Nashville, Tennessee, for the appellant, Evan Kenyon Knox.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Jeff Burks, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

*Guilty plea hearing*

On August 21, 2012, Defendant entered a guilty plea to the lesser-included offense of second degree murder. At the plea submission hearing, the trial court asked Petitioner if his trial counsel had explained to Petitioner that he was "agreeing to a thirty-year sentence, which is a little higher than the range [and that] Count 2 [was] being dismissed." The trial court also asked Petitioner if he understood that he was pleading guilty to a lesser-included offense of the charged offense. Petitioner answered affirmatively. The following exchange occurred:

> THE COURT: . . . . I now have a petition that tells me you want to enter a plea to a lesser offense of murder in the second degree, which is a knowing killing of another individual. It's going to be a thirty-year sentence at a hundred percent because the law requires that murder in the second degree be served at a hundred percent. Now, though it is a – when we're talking about – you're kind of pleading out of range. What that means is if you had gone to trial and been convicted of murder in the second degree as a lesser offense, your range of punishment would have been fifteen to twenty-five years. But in order to kind of arrange this agreement you've agreed to go up to thirty years just so that you would get convicted of murder in the second degree. Did you understand that?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: Okay. So it's a little higher punishment than you would have gotten if you would have been convicted of murder in the second degree. But at the same time it's not being convicted of murder in the first degree.

The trial court further explained that Petitioner's other charge would be dismissed and that if he was convicted of the second charge at trial, it carried a sentence of ten years. The trial court asked Petitioner,

2

Now, have you thoroughly discussed everything about your case with [trial counsel]? By that I mean have you gone over all the discovery in this case, any defenses you might have if you had any, or any witnesses that you might call to [testify at] trial. I just want to make sure you've thoroughly discussed everything about your case.

Petitioner answered affirmatively. Petitioner stated that he could read and that he had started his freshman year in college. He stated that he and trial counsel had read the plea agreement together. The trial court asked if Petitioner had any questions about the plea agreement, and Petitioner asked about a prior five-year sentence. The trial court explained that his sentence in this case would run consecutively to that sentence, and the trial court explained Petitioner's jail credits.

The trial court asked Petitioner if he had "any difficulty understanding what [he was] doing," and Petitioner replied, "No, ma'am." The trial court asked, "Do you understand, [Petitioner], you don't have to plead guilty? You have a right to go to trial. It's set for trial, and we're ready to go. And you can go to trial if you want to. Do you understand that?" Petitioner answered affirmatively. The trial court asked if Petitioner was satisfied with trial counsel's services, and Petitioner answered, "Absolutely." The trial court explained the rights that Petitioner was waiving by pleading guilty. The trial court asked if Petitioner wanted to waive his rights and enter a guilty plea, and Petitioner responded affirmatively.

The State gave the following factual basis for Petitioner's plea:

[O]n 5-30-11 at 626 Charles E. Davis Boulevard in Nashville, Davidson County the defendant was identified by two to three persons as a person who shot Antonio Rutledge, Thomas Rutledge, multiple times as he was driving a four-wheel vehicle through the – through the neighborhood. The State would introduce those witnesses as well as the statement the defendant made to detectives in Portland, Oregon, where he went after that.

[Trial counsel] has – we've given [trial counsel] everything we have. He's gone over with his client, I'm sure, everything we were in possession of, including the interviews with the persons and the detective, detectives' reports and interview from the detectives in Oregon. Had the case gone to trial Monday we were certainly on the same page. The ballistics report from the TBI showed that each – each

3

of the shell casings at the scene was from the same weapon. And that would be introduced on Monday, and that would be the State's proof.

*Post-conviction hearing*

At the post-conviction hearing, Petitioner testified that he discussed the State's plea offer with his trial counsel and that he understood that he would receive a sentence of thirty years in exchange for his guilty plea. Petitioner testified that counsel did not discuss with him his status as a Range I offender. Petitioner testified that counsel "just told [him he] was pleading out of [his] range. That was it." Petitioner testified that trial counsel did not advise him that the sentencing range for second degree murder was 15 to 25 years. Petitioner acknowledged that he told the trial court at his plea acceptance hearing that he understood the possible range of punishment and that he was being sentenced outside of his range. He testified that trial counsel advised him to "just say yes to everything." He testified, "I was just going with what my lawyer, you know, under the advisement of my lawyer." Petitioner testified that trial counsel advised him "to take this deal or [he was] going to get life." Petitioner testified that he believed he was "forced" to accept the State's plea offer. He testified, "it's either this or I'm going to get life."

On cross-examination, Petitioner acknowledged that one witness identified him as the perpetrator during Petitioner's preliminary hearing. Petitioner testified that he understood the charges against him. He testified that he understood that he could have received a life sentence if he had been convicted as charged at a trial. Petitioner testified, "I was ready to go to trial. . . . I took the deal two days prior to going to trial. I wanted to go to trial."

Petitioner testified that he understood that he had a right to a jury trial and that trial counsel discussed with him the State's proof against him. Petitioner testified that he did not receive a "layout of the neighborhood" to use in order to "show where the State's witnesses w[ere] telling lies[.]" He also asked trial counsel to request a continuance so that he could locate more witnesses, and trial counsel told him the trial could not be continued. Petitioner acknowledged that he stated during the plea acceptance hearing that he was satisfied with counsel's services. Petitioner testified that he "relied on [counsel's] advice" to "[j]ust say yes to everything."

Regarding his guilty plea and sentence, Petitioner testified:

> I went on [trial counsel's] advice. Had I been explained that the sentencing range and the guidelines and all that is part bargaining tools, I wouldn't have took [sic] no deal pleading out of no range. Five more

4

years for a second degree murder – like the most time I could have got was a twenty-five. Why would – anybody with common sense would see I would not take five more years.

Petitioner testified that he had signed the plea agreement on the day prior to entering his guilty plea. He testified that during the plea submission hearing, he thought that "it was already really just locked in." He testified, "I didn't know I could have just said, no, exclude everything now, it's over with, and we're going to go on and go to trial."

Trial counsel testified that he had been licensed to practice law in Tennessee for approximately ten years. Trial counsel's practice consisted primarily of criminal defense cases. Trial counsel was appointed to represent Petitioner after Petitioner's arraignment. Trial counsel obtained the services of a private investigator to assist with Petitioner's case. Trial counsel described Petitioner as "very articulate" and testified that Petitioner "communicated with [him] in writing quite often and, in fact, about legal principles and certain things that [Petitioner] and [trial counsel] had quite a bit of discussions about[.]" Trial counsel reviewed discovery with Petitioner, including Petitioner's statement to police and the layout of the neighborhood where the offense occurred. Trial counsel believed that Petitioner "thoroughly understood" the possible defenses in his case and the possible outcomes. Trial counsel testified that he told Petitioner that he believed the "likelihood of conviction was extremely high."

Trial counsel testified that he explained to Petitioner that his sentence was out-of-range, and Petitioner "understood that that was the bargain." The State initially offered Petitioner a sentence of forty years. Trial counsel testified that he reviewed the plea agreement with Petitioner on the day prior to Petitioner's plea submission hearing. Trial counsel testified that he was prepared for trial. Trial counsel testified that he did not advise Petitioner to answer affirmatively to all of the trial court's questions at the plea submission hearing. Trial counsel's advice to Petitioner was "not to just say yes to everything, it was when you address the Court you say, yes, ma'am and no, ma'am and the district attorney as yes, sir and no, sir."

*Analysis*

Petitioner contends that his guilty plea was unknowingly and involuntarily entered, and his trial counsel provided ineffective assistance because trial counsel did not advise Petitioner of the applicable sentencing range. Petitioner claims that he accepted the plea offer "out of fear and pressure," and Petitioner asserts that but for trial counsel's "erroneous advice," Petitioner would have insisted on going to trial.

5

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 205, 280 L. Ed. 2d 674 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." *Id*. at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. *Serrano v. State*, 133 S.W.3d 599, 605 (Tenn. 2004) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see*

6

*also Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Following the evidentiary hearing, in a written order denying relief, the post-conviction court concluded that Petitioner had failed to prove by clear and convincing evidence that trial counsel's performance was deficient or that Petitioner was prejudiced by any alleged deficiency. The court further concluded that Petitioner had failed to establish that his guilty plea was not entered knowingly and voluntarily. The post-conviction court found, in part,

> Petitioner's primary complaint is he did not realize that the jury had the option of acquitting him of the charges. Petitioner, however, agreed that after rejecting the initial 40[-]year plea offer, he elected to enter a plea for a 30-year sentence. He felt like his "back [was] against the wall" because he did not like his choices of either proceeding to trial where if convicted he would be sentenced to life or taking a 30-year sentence. Nonetheless, Petitioner realized it was his choice to enter the plea.
>
>         . . . .
>
> Petitioner admitted he made a choice to accept the plea although he did not like his two options: go to trial with [a] likelihood of conviction resulting in a life sentence or pleading guilty for 30 years.

7

The post-conviction court specifically accredited the testimony of trial counsel. The court noted that the guilty plea transcript revealed that the trial court advised Petitioner that a 30-year sentence was "higher than the range" and that "had [Petitioner] gone to trial and been convicted of murder in the second degree as a lesser offense, [his] range would have been fifteen to twenty-five years." The post-conviction court found that "Petitioner was engaged during the plea colloquy. He did not merely answer questions simply with 'yes' or 'no' but provided appropriate responses." The court also found that "Petitioner responded with an unqualified, 'absolutely'" when asked by the trial court if Petitioner was satisfied with his trial counsel. Finally, the post-conviction court concluded, "[a] review of the record including the guilty plea hearing [Ex. 1] affirmatively demonstrates that the petitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily and knowingly entered."

We conclude that the evidence does not preponderate against the post-conviction court's findings and conclusions. The transcript of the plea submission hearing shows that the trial court explicitly told Petitioner that his 30-year sentence was out-of-range and that if he had been convicted at trial of second degree murder, the applicable sentencing range would have been 15 to 25 years. At the post-conviction hearing, Petitioner testified that trial counsel discussed with him the charges against him. Trial counsel testified, and Petitioner acknowledged, that trial counsel discussed with Petitioner the evidence against Petitioner. Petitioner understood that pursuant to the plea agreement he would receive an out-of-range sentence of 30 years. Petitioner testified that he understood he could have received a life sentence if convicted of first degree murder. At the plea hearing, Petitioner indicated that he understood what he was doing, and he gave appropriate responses to the trial court's questions, contradictory to Petitioner's testimony that he gave canned responses to all of the court's questions because trial counsel had advised him to "just say 'yes' to everything." Petitioner has failed to establish that trial counsel provided ineffective assistance or that Petitioner's guilty plea was unknowingly or involuntarily entered.

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

8